# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF GEORGIA
# COLUMBUS DIVISION

| | |
|---|---|
| **SHARYEL PERRY, individually, and on behalf of and all others similarly situated,**<br><br>　　　　　　　　**Plaintiffs,**<br>v.<br><br>**METROPOLITAN LIFE INSURANCE COMPANY,**<br>　　　　　　　　**Defendant.** | **CIVIL ACTION NO.**<br><br><br>**CLASS ACTION** |

## COMPLAINT FOR DAMAGES AND CORRESPONDING REQUEST FOR DECLARATORY AND INJUNCTIVE RELIEF

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ................................................................................................ 2

INTRODUCTION.......................................................................................................................... 3

JURISDICTION ............................................................................................................................ 3

VENUE............................................................................................................................................ 3

PARTIES ........................................................................................................................................ 4

FACTUAL ALLEGATIONS......................................................................................................... 4

    A.    LTD Plan and coverage. ................................................................................... 4

    B.    Met Life is acting as an ERISA administrator and fiduciary. ......................... 4

    C.    Ms. Perry's long-term disability ("LTD") claim................................................. 5

    D.    The Court finds Met Life did not comply with the ERISA claim regulations. 6

    E.    Met Life approves Ms. Perry's appeal for LTD benefits. ................................. 6

    F.    Ms. Perry is approved for Social Security disability benefits. .......................... 7

    G.    Met Life seeks to recover a claimed overpayment of LTD benefits from Ms. Perry. ........................................................................................................................... 7

    H.    Ms. Perry learns of Met Life's ERISA overpayment policies and procedures. .................................................................................................................................. 7

    I.    Met Life refuses to provide Ms. Perry with the ERISA policies and procedures for waiver or forgiving claimed overpayments. ............................. 8

    J.    Ms. Perry files a claim with Met Life seeking waiver and/or forgiveness of the claimed overpayment. ..................................................................................... 8

CLASS ALLEGATIONS .............................................................................................................. 9

CLASS CLAIMS............................................................................................................................ 11

RELIEF......................................................................................................................................... 13

## PRELIMINARY STATEMENT

ERISA plan fiduciaries have an obligation to administer welfare benefit plans _consistently_, treating all plan participants and beneficiaries in similar fashion.  This fiduciary obligation extends to the administration of ERISA group long-term disability ("LTD") insurance benefits.  Plaintiff and the putative class contend Defendant failed to fulfill this fiduciary obligation.

Plaintiff and the putative class are (or were) participants under LTD insurance policies issued by Defendant to ERISA plans.  While insured participants, Plaintiff and the putative class applied for and were approved for the LTD insurance policy benefits.  The insurance policy provides that LTD insurance policy benefits may be subject to reduction should a participant receive "Other Income", including but not limited to Social Security Disability.  Upon a participant's receipt of "Other Income", Defendant aggressively seeks to recover the alleged resulting overpayment.  Generally, Defendant convinces participants to sign over their retroactive Social Security disability benefits to satisfy the alleged overpayment. When this approach is unsuccessful, Defendant employs self-help and withholds the participant's monthly LTD benefits.  In either scenario, Defendant seeks to recover 100% of the alleged overpayment.

As an ERISA fiduciary, Defendant is required to maintain "administrative processes and safeguards to ensure" that the LTD plan provisions "have been applied consistently with respect to similarly situated claimants."  This fiduciary obligation encompassed Defendant's administration of alleged LTD benefit overpayments based on the receipt of "Other Income." Plaintiff and the putative class have learned that Defendant's administrative processes and safeguards for consistent administration include standardized and national "policies and procedures concerning overpayment claims" and "requests for waiver or forgiving any overpayments" affecting all ERISA LTD plans insured by Defendant.

Defendant has refused to provide Plaintiff and the putative class with these same standardized and national ERISA administrative processes and procedures—depriving them of the right to seek and to receive the same waiver and forgiveness of any alleged overpayments. Having exhausted the ERISA administrative process, Plaintiff and the putative class now seek all available relief from this Court, including but not limited to receiving the same requisite waiver and forgiveness of any alleged overpayments.

## INTRODUCTION

1.  This class action complaint seeks legal and equitable damages arising from and relating to Defendant's actions as an ERISA fiduciary and corresponding administration of group long-term disability insurance policies.

2.  The headings contained in this class action complaint are intended only to assist in reviewing the statements and allegations contained herein.  To avoid the unnecessary repetition in each section, Plaintiff affirms and incorporates each paragraph in each section of this class action complaint as though fully set forth therein.

3.  The factual allegations found in this class action complaint are not exhaustive and are presented throughout this class action complaint so as to provide the requisite notice of the basis for Plaintiff's, and the putative class', allegations.

## JURISDICTION

4.  This Court has subject matter jurisdiction over the claims asserted in this action for monetary and equitable relief under Federal Question Jurisdiction pursuant to 28 U.S.C. § 1331 and the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1132(e)(1) and § 1132(f).

## VENUE

5.  Venue is proper in this Court pursuant to 29 U.S.C. §1132(e)(2) and 28 U.S.C.

§1391(b) because the Plaintiff resides in this district and Defendant may be found within this district thereby subjecting all parties to the Court's personal jurisdiction.

## PARTIES

6. Plaintiff Sharyel Perry ("Ms. Perry") is a citizen of the United States, a resident of the State of Alabama, and a participant under the LTD insurance policy at issue in this lawsuit.

7. Defendant Metropolitan Life Insurance Company ("Met Life") is a corporation organized under the laws of the State of New York and licensed as an insurer in the State of Georgia. Met Life is the underwriter, insurer, and administrator for the ERISA group LTD insurance policies subject to the claims in this lawsuit.

## FACTUAL ALLEGATIONS

**A.     LTD Plan and coverage.**

8. Ms. Perry is an insured participant under an ERISA group LTD insurance policy issued to her employer (Synovus Financial Corporation) by Met Life. See <u>Exhibit A</u>.

**B.     Met Life is acting as an ERISA administrator and fiduciary.**

9. Met Life acted as the administrator and fiduciary with respect to the processing, approval, and payment of claims under the LTD policy. *Id*., p.58[1] ("Met Life will review your claim and notify you of its decision to approve or deny your claim."); p.47 ("We will make any benefit payments during Your lifetime to You.").

10. In its capacity as the administrator and fiduciary, Met Life exercised direct control over ERISA plan assets, including but not limited to the payment of LTD benefits and the recovery of any alleged LTD benefit overpayments. *Id*., p.50 ("We have the right to recover

---

[1]   Because Met Life has not numbered each page of the policy, the pagination used herein refers to the exhibit (pdf) page number.

any amount that We determine to be an overpayment…. You have an obligation to reimburse Us.").

11. Pursuant to the LTD policy, as well as Met Life's prior representations to this Court, Met Life was provided with discretion in the administration of the plan and the corresponding participant claims relating to the LTD benefits.

**C.     Ms. Perry's long-term disability ("LTD") claim.**

12. In January 2014, because of limitations caused by her disabling conditions and corresponding treatment regimen, Ms. Perry ceased work and applied for benefits under the LTD insurance policy issued to Synovus by Met Life.  Met Life approved Ms. Perry's claim, finding she was disabled under the plan terms, and commenced paying her monthly LTD disability benefits effective April 20, 2014.

13. Met Life subsequently reversed its approval of Ms. Perry's LTD claim.  Without any improvement in her physical condition or her ability to perform her prior job duties at Synovus, Met Life terminated her disability benefits effective May 19, 2015.

14. On October 28, 2015, Ms. Perry appealed Met Life's decision to terminate her LTD benefits and submitted additional supporting medical records and objective medical findings from her treating physician.

15. Despite the ERISA claim regulation mandated deadlines for responding to an appeal, Met Life delayed taking any action on Ms. Perry's appeal.  Met Life did not assign Ms. Perry's appeal to a claim representative until December 8, 2015—over a month after receiving the appeal and just 4 days before Met Life's appeal decision was due.

16. Met Life's delay is part of an internal systemic process of delaying appeal decisions for its own financial benefit.  With each passing day, and month, Met Life continued to earn significant sums of money on unpaid LTD benefits.

17. Based on Met Life's failure to render a timely decision on her appeal, Ms. Perry was deemed to have exhausted her administrative remedies. Accordingly, she filed a lawsuit seeking appropriate relief, including but not limited to the payment of her LTD benefits.[2]

**D.   The Court finds Met Life did not comply with the ERISA claim regulations.**

18. In response to Ms. Perry's complaint, Met Life filed a motion to dismiss—arguing she had failed to exhaust her administrative remedies.[3]

19. The Court subsequently denied Met Life's motion, finding Met Life did not engage in a good faith effort to respond to Ms. Perry's appeal:

> Instead, based on what MetLife submitted to the Court, MetLife acknowledged receipt of Perry's appeal on November 12, 2015, assigned the appeal to another appeal specialist on December 8, 2015, and did nothing to seek additional information from Perry or her doctors before December 14, 2015. The present record simply does not establish that MetLife engaged in good faith efforts to complete the administrative process. Thus, based on the present record, MetLife did not substantially comply with ERISA's deadlines. Perry is therefore deemed to have exhausted administrative remedies, and she is entitled to proceed to judicial review.[4]

*Perry v. Metro. Life Ins. Co.*, 2016 U.S. Dist. LEXIS 116610, at *14-15 (M.D. Ga. Aug. 30, 2016).

**E.   Met Life approves Ms. Perry's appeal for LTD benefits.**

20. Following the Court's decision, the parties conferred and filed a Joint Scheduling and Discovery Order.[5] The schedule required Met Life to file its responsive pleading (answer) no later than September 27, 2016. However, on the eve of the deadline for its answer, Met Life

---

[2]   *Perry v. Metro. Life Ins. Co.*, Case No. 4:16-cv-00135-CDL (M.D.Ga.).
[3]   *Id*, Dkt. 26, p.2 ("Plaintiff's claims under 29 U.S.C. §1132(a) must be dismissed because Plaintiff filed this suit before MetLife made an appeal determination. Plaintiff therefore failed to exhaust her administrative remedies…").
[4]   *Id*., Dkt. 30, pp.12-13.
[5]   *Id*., Dkt. 32.

approved Ms. Perry's appeal.

21. Met Life reinstated Ms. Perry's LTD benefits, provided a corrective payment of the past due LTD benefits, and paid the requisite 9.25% interest to account for the delay and to avoid unjustly enriching Met Life.

22. Since that time, and through today and beyond, Met Life has continued to approve Ms. Perry for the plan LTD benefits.

**F.     Ms. Perry is approved for Social Security disability benefits.**

23. On July 21, 2017, Ms. Perry was approved by Administrative Law Judge Carla McMichael for Social Security disability benefits ("SSDI"), with a disability date of January 17, 2014.

**G.     Met Life seeks to recover a claimed overpayment of LTD benefits from Ms. Perry.**

24. Immediately following her approval for Social Security disability benefits, Met Life sought to recover what it deemed to be an overpayment of Ms. Perry's LTD benefits.

25. Met Life represented to Ms. Perry that her only options for resolving the claimed overpayment were to:

   a.   remit the entire amount in a single payment—presumably from her protected SSDI benefits; or

   b.   have her future LTD benefits withheld in full and applied to the claimed overpayment.

26. Met Life did not provide Ms. Perry with any other alternatives and did not advise her of any other rights she had under the plan.

**H.     Ms. Perry learns of Met Life's ERISA overpayment policies and procedures.**

27. Following Met Life's request that she remit the entire claimed overpayment, Ms. Perry requested Met Life provide her with:

   Met Life's written policies and procedure concerning overpayment claims

(i.e. the written procedures required to be maintained by the Department of Labor claim regulations).

28.     Ms. Perry further requested that Met Life:

[E]xplain its policies regarding waiving or forgiving any alleged overpayments - in whole or in part. Simply put, has Met Life ever waived or forgiven an alleged overpayment? If so, please provide a complete description of the "policies and procedures concerning overpayment claims" and "requests for waiver or forgiving any overpayments."

29.     Met Life admitted it maintains the required written policies and procedures but refused to disclose them, or to otherwise make them available, to Ms. Perry.

The information you are seeking regarding Metlife's written policies and procedures concerning overpayment claims is outside the scope of what is appropriate or required to be produced under applicable Department of Labor Regulations during the administrative review process and therefore, is not subject to disclosure.

MetLife reviews any requests for waiver or forgiving any overpayments on a case by case basis.

**I.     Met Life refuses to provide Ms. Perry with the ERISA policies and procedures for waiver or forgiving claimed overpayments.**

30.     Having confirmed the existence of Met Life's ERISA policies and procedures for waiver or forgiving claimed overpayments, Ms. Perry again requested Met Life provide her with the same information.  Met Life again refused.

31.     Ms. Perry's third and fourth requests, for Met Life to provide her with its ERISA policies and procedures for waiver or forgiving claimed overpayments, were also summarily denied by Met Life.

**J.     Ms. Perry files a claim with Met Life seeking waiver and/or forgiveness of the claimed overpayment.**

32.     Despite being prejudiced by Met Life's refusal to provide her with the ERISA policies and procedures for waiver or forgiving claimed overpayments, Ms. Perry filed a claim

seeking waiver and/or forgiveness of Met Life's claimed overpayment. In relevant part, her claim stated as follows:

> By prior correspondence, as well as by telephone, Met Life confirmed it has policies and procedures for waiving and/or forgiving alleged overpayments of LTD benefits. Despite Ms. Perry's multiple requests, Met Life has refused to provide the corresponding plan documents containing the written policies and procedures. As such, Ms. Perry's ability to prepare this claim have been prejudiced. Therefore, Ms. Perry requests Met Life provide her with the same waiver and/or forgiveness of her alleged overpayment as Met Life has provided to other plan participants. To the extent Met Life has provided similar benefits to other participants, Ms. Perry requests Met Life completely waive and/or forgive her alleged overpayment and issue a corrective payment for all withheld LTD benefits with interest accrued at 9.25% and compounded monthly.

33. As part of her claim, Ms. Perry made a fifth request for Met Life to provide her with the ERISA policies and procedures for waiver or forgiving claimed overpayments.

34. Consistent with its prior failure to comply with its fiduciary obligations under the ERISA claim regulation deadlines, Met Life again failed to render a decision. Met Life ignored Ms. Perry's claim. As such, Ms. Perry is again deemed to have exhausted her administrative remedies.

## CLASS ALLEGATIONS

35. Ms. Perry brings this action on behalf of herself and as a class action under FRCP 23 on behalf of all members of a class (the "Class") defined as follows:

> All persons insured under a group long-term disability ("LTD") insurance policy ("Policy") issued and administered by Metropolitan Life Insurance Company ("Met Life") and from whom Met Life recovered, either in a lump sum or by withholding Policy benefits, an overpayment based on the receipt of "Other Income."

36. The Class consists of persons residing throughout Georgia, as well as the United States, and is sufficiently numerous such that individual joinder is neither feasible nor practical in this Court. The disposition and resolution of the Class members' similar claims in this action

will provide substantial benefits to the parties and the Court by making more efficient use of limited resources including time and costs. The exact number and identity of the Class members will be properly determined through discovery. However, it is expected that the Class size will exceed one thousand (1,000) persons.

37. There is a well-defined community of interest in the questions of law and fact presented by Ms. Perry's and the Class' claims. Ms. Perry and the Class have suffered the same injury and resulting damages because of Met Life's wrongful conduct— (i) its failure to provide each person with the right to seek a waiver and/or forgiveness of any overpayment claim; and (ii) its failure to provide each affected person with the same economic value of the waiver and/or forgiveness of any overpayment claim. The resolution of Met Life's wrongful conduct—the common question with a common answer—will be dependent on the same federal law and the same facts, thereby allowing for a common resolution for the Class.

38. Ms. Perry's claims—including the policy terms, and administrative policies and procedures at issue—are typical to those of the Class. Similarly, any defenses proffered by Met Life in an effort to justify its wrongful conduct will apply both to Ms. Perry and to the Class.

39. Ms. Perry's interests are aligned with those of the Class—again, seeking all available relief for Met Life's wrongful conduct. Further, as evidenced by filing this complaint, Ms. Perry has indicated a willingness to represent both her interests as well as those of the Class. To that end, Ms. Perry has retained qualified and experience counsel to vigorously pursue the Class claims. She can and will fairly and adequately represent and protect the Class' interests.

40. The claims herein are properly suited for Class resolution because:

    a. The prosecution of separate actions by individual Class members would create a risk of inconsistent or varying adjudications—potentially resulting in compatible treatment of Class members, contrary to the ERISA claim regulations.

   b. Separate adjudications would be dispositive of the interests of non-party Class members resulting in substantial impairment or impediment to their interests as ERISA insured participants under Met Life group long-term disability policies;

   c. The record confirms that Met Life has engaged, and continues to engage, in wrongful conduct—violating its fiduciary duties—making final injunctive and/or declaratory relief appropriate to the Class;

   d. Common questions of fact and law applicable to the Class' claims—concerning Met Life's violation of its fiduciary duties—predominate over any individual questions, making Class resolution a superior method for fairly and efficiently adjudicating the ERISA claims raised in this lawsuit.

41. Furthermore, the claims herein are properly suited for Class resolution because the damages suffered by many individual Class members may be relatively small and, as a result, the expense and burden of individual litigation would make it prohibitive and impractical to pursue individual legal action.

## CLASS CLAIMS

42. As the entity responsible for administering LTD policy claims, including determining the amount of any overpayment and pursuing reimbursement, Met Life was acting, and continues to act, as an ERISA fiduciary.

43. As an ERISA fiduciary, and pursuant to 29 U.S.C. Section 1104(a), Met Life is required to discharge its duties "solely in the interests of the participants and beneficiaries" and for the "exclusive purpose" of providing benefits to participants and their beneficiaries" and paying reasonable expenses of administering the plan. It must do so with reasonable "care, skill, prudence, and diligence" and in accordance with the terms of the plans it administers. It must conform its conduct to a fiduciary duty of loyalty and may not make misrepresentations to its insured participants.

44.     As an ERISA fiduciary, and pursuant to 29 CFR 2560.503-1(b), Met Life has an obligation to "establish and maintain reasonable procedures governing the filing of benefit claims, notification of benefit determinations, and appeal of adverse benefit determinations (hereinafter collectively referred to as claims procedures)."

45.     Pursuant to 29 CFR 2560.503-1(b)(5), Met Life's claim procedures "will be deemed to be reasonable *only if* … the plan provisions have been *applied consistently* with respect to similarly situated claimants."

46.     Met Life has admitted to maintaining written claim procedures including, and directly applicable to this lawsuit, "policies and procedures concerning overpayment claims" and "requests for waiver or forgiving any overpayments" affecting all ERISA LTD plans insured and administered by Met Life.

47.     Despite admitting it waives and/or forgives overpayments for its insured participants, it is clear that Met Life: (i) does *not* consistently provide the waiver and/or forgiveness to all insured participants; and (ii) does *not* provide its insured participants with, or otherwise make them aware of, its "policies and procedures concerning overpayment claims" and "requests for waiver or forgiving any overpayments."

48.     Met Life's admitted actions have violated, and continue to violate, its fiduciary duties to each insured participant.  It has improperly provided lesser plan benefits to insured members, as well as refused to provide necessary and required plan "policies and procedures concerning overpayment claims" and "requests for waiver or forgiving any overpayments."  As a direct result, insured participants have been: (i) denied their right to seek relief from any overpayment claims; and (ii) denied their right of consistent treatment in terms of waiver and/or forgiveness of any overpayment claims—resulting in them receiving greatly reduced benefits

either by way of a lump sum reimbursement payment or by Met Life's withholding of their LTD benefits.

49. 29 U.S.C. §1132(a)(1)(B) is the enforcement mechanism permitting the Class to enforce their right to recover, and to otherwise clarify their right to receive, the LTD benefits due them under the terms of the "policies and procedures concerning overpayment claims" and "requests for waiver or forgiving any overpayments." This relief includes but is not limited to: (i) the Class being provided the same most favorable waiver and/or forgiveness of any overpayment claim as provided to any other insured; (ii) Met Life being required to reimburse any recovery, with applicable earnings to prevent unjust enrichment; and (iii) the Class obtaining injunctive relief requiring Met Life to provide similar relief to all Class members hence forward.

50. 29 U.S.C. §1132(a)(3)(A) is the enforcement mechanism permitting the Class to enjoin Met Life's wrongful conduct which violates its fiduciary duties, including but not limited to 29 CFR 2560.503-1(b)(5).

51. 29 U.S.C. §1132(a)(3)(B) is the enforcement mechanism permitting the Class to otherwise obtain other appropriate relief for Met Life's wrongful conduct. Such relief includes obtaining redress by way of equitable surcharge and disgorgement of the funds recovered by Met Life for any overpayment. The relief also includes enforcing the 29 CFR 2560.503-1(b)(5) requirement that Met Life apply its "policies and procedures concerning overpayment claims" and "requests for waiver or forgiving any overpayments" consistently to all insured participants—with corresponding reimbursement of all funds recovered by Met Life for any overpayment.

**RELIEF**

**WHEREFORE**, Plaintiff and the putative class seek judgment in their favor and against Defendant as follows:

52. Find this action, and the claims herein, satisfy the requirements of FRCP 23 and certify it as a Class Action, appoint Plaintiff to represent the Class, and appoint the undersigned as Class counsel;

53. Enter final judgment against Defendant, and in favor of the Class, as to each claim asserted herein, and award all available legal, equitable, declaratory, injunctive, and pecuniary/punitive relief;

54. Order Defendant to pay the Class all attorney fees and expenses incurred in, and relating to, their prosecution of this action including but not limited to the cost of experts;

55. Award the Class pre- and post-judgment interest at the greater of 9.25% compounded monthly, or the actual rate earned by Defendant thereby preventing any unjust enrichment;

56. Award all other relief provided by the policy terms, the law, and/or as the Court deems appropriate and just.

* * * * * * * * *

Date: July 2, 2019                                     Respectfully Submitted,

                                                       s/ Heather K. Karrh

**Grabhorn Law | Insured Rights™**           **Rogers, Hofrichter & Karrh, LLC**
Michael D. Grabhorn, *pro hac vice* [6]      Heather K. Karrh
Kentucky Bar No. 89842                       Georgia Bar No. 408379
m.grabhorn@grabhornlaw.com                   hkarrh@rhkpc.com
Andrew M. Grabhorn, *pro hac vice*           225 S. Glynn Street, Suite A
Kentucky Bar No. 96477                       Fayetteville, GA 30214
a.grabhorn@grabhornlaw.com                   p: (770) 460-1118
2525 Nelson Miller Parkway, Suite 107
Louisville, KY 40223
p: (502) 244-9331

*Counsel for Plaintiff Sharyel Perry and the Putative Class*

---

[6]   *Pro hac vice* motions have been filed concurrently with this class action complaint.